IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN E. SHMAGIN,<br><br>    Plaintiff,<br><br>    v.<br><br>URIGEN PHARMACEUTICALS, INC.<br><br>    Defendant. | Case No.: 12-2630 JSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE DEFAULT (Dkt. No. 12)** |

Now pending before the Court is Defendant's Motion to Set Aside Default. After carefully considering the papers submitted by the parties and having had the benefit of oral argument, the Court GRANTS Defendant's Motion to Set Aside Default for good cause shown.

### ALLEGATIONS OF THE COMPLAINT

Plaintiff Martin E. Shmagin ("Plaintiff" or "Shmagin") was an employee of Urigen Pharmaceuticals, Inc. ("Defendant" or "Urigen"), a Delaware Corporation, with its principal place of business in Wilmington, Delaware. (Dkt. No. 5 ¶¶ 2, 3). Urigen is involved in the development of medical products, and is currently developing a drug known as URG101 for the treatment of painful bladder syndrome and interstitial cystitis. (Dkt. No. 5 ¶ 7). Urigen's only sources of income at this time "are investment capital and income of URG101 for

'compassionate use.'" (Dkt. No. 5 ¶ 8.)  While URG101 has completed Phase 2 of the clinical trials necessary for FDA approval, it has not yet progressed to Phase 3 or Phase 4.  (Dkt. No. 5 ¶ 9.)

In August 2008, Urigen and Plaintiff entered into an Employment Agreement ("Agreement"). (Dkt. Nos. 5-2). The Agreement provided that Plaintiff was to be hired as CFO of Urigen with an annual base salary of $225,000. (Dkt. No. 5 ¶ 12, No. 5-2). In addition, Plaintiff was entitled to receive an annual bonus at the Board of Directors discretion, benefits, prompt reimbursement for reasonable expenses, and a paid annual vacation of four weeks and other fringe benefits, "and certain specified payments in the event he terminated the Employment Agreement for Good Reason." (Dkt. No. 5 ¶ 12).

Defendant informed Plaintiff in or about March and April of 2011, that a decision was made to replace him as CFO with a part-time CFO based in New Jersey and to transition Plaintiff to a consulting role where he would be compensated on an hourly basis without benefits, for an unspecified number of hours, and the responsibilities of the consulting role were left unclear. (Dkt. No. 5 ¶ 17). Defendant's decision amounted to a material reduction in Plaintiff's responsibilities, compensation, and title, which, under the Agreement, was listed as a "Good Reason" for which Plaintiff could terminate the Agreement. (Dkt. No. 5 ¶ 20).

Plaintiff gave his notice of termination of employment for Good Reason on May 4, 2011. (Dkt. No. 5 ¶ 20). Urigen has not paid Plaintiff the monies he is entitled to under the Employment Agreement. (Dkt. No. 5 ¶¶ 22-24).

## PROCEDURAL HISTORY

Plaintiff filed his initial Complaint ("Complaint") on May 22, 2012. (Dkt. No. 1). On June 1, 2012, he filed an Amended Complaint. (Dkt. No. 5). Plaintiff's causes of action can be divided into two categories: those he has as a former employee, and those he has as a shareholder. As to the former, he makes a claim for breach of the Employment Agreement. As for the latter, he alleges breach of fiduciary duty based upon Urigen's failure to keep its corporate filings with the Securities and Exchange Commission ("SEC") current, which resulted in the inability to manage or negotiate the shares Plaintiff owns. (Dkt. No. 5 ¶¶ 30-32). Plaintiff also alleges that

Urigen breached its fiduciary duty by failing to advance the clinical trial process of URG101 through the Food and Drug Administration ("FDA"). (Dkt. No. 5 ¶¶34-37).

  Plaintiff served Defendant with the Summons and FAC by substituted service on June 15, 2012. Counsel for Plaintiff and Defendant began e-mail, voicemail, and postal mail communications on June 28, 2012, when Defendant contacted Plaintiff to request a two-week extension of time to file a responsive pleading in light of the approaching response date and Independence Day holiday. (Dkt. Nos. 9 ¶7). Plaintiff refused to grant the extension on the ground that he believed Urigen could not defend itself in the action because its corporate status reflected as "Forfeited" on the California Secretary of State's website. (Dkt. No. 12-2, p. 9). Defendant replied the next day, on June 29, stating that although the registration in California had been forfeited, Urigen is still a valid corporation in Delaware (the state of incorporation) and that Urigen plans to file a responsive pleading. (Dkt. No. 12-2, p. 12). Plaintiff responded the same day, contending that Urigen did not have the capacity to defend itself in California due to its forfeited registration, and that Plaintiff would move to have a default entered if the corporate status is not resolved before the day a responsive pleading is due. (Dkt. No. 12-2, p. 14). On July 3, Defendant responded that it is working to cure the forfeited status expeditiously and asked Plaintiff not to take further action, including a motion for default, for at least forty-five days. (Dkt. No. 12-2, p. 16). Plaintiff's counsel responded the same day that she would attempt, but could not guarantee, that she would reach her client to discuss the matter. (Dkt. No. 12-2, p. 18).

  Without further communication, Plaintiff filed a Request to Enter Default on July 12, 2012—six days after Defendant's response was due. (Dkt. Nos. 8, 12-2 ¶¶ 11-12).

  Defendant subsequently twice communicated its progress in curing its corporate status in California as well as its request for Plaintiff to withdraw Plaintiff's Motion to Enter Default on July 18 and 27, 2012, to which Plaintiff never responded. (Dkt. No. 12-2 ¶ 11). Defendant communicated on July 27 that it had submitted its Application for Certificate of Revivor on July 26, 2012, from which it would take approximately 10-14 days for Urigen's corporate status to reflect good standing. (Dkt. No. 12-2 ¶12). The Clerk entered Defendant's default on July 19,

2012. (Dkt. No. 11). Defendant filed the pending Motion to Set Aside Entry of Default ("Motion") one month later, on August 20, 2012. (Dkt. No. 12).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(c), a court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). The good cause analysis involves three factors: (1) whether the defendant engaged in culpable conduct that led to the default; (2) whether the defendant has a meritorious defense; and (3) whether reopening the default would prejudice the plaintiff. *Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000). The court is free to deny the motion if "any of the three factors was true." *Id.*

The good cause standard that governs vacating an entry of default under Rule 55(c) is the "same standard that governs vacating an entry of default judgment under Rule 60(b)." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). However, courts have broader discretion and greater procedural flexibility in evaluating relief from entry of default alone. *Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000). Default judgments "are appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *TCI Grp.*, 244 F.3d at 696 (internal quotation marks and citation omitted).

## DISCUSSION

### A.    Good Cause to Set Aside Default Under 55(c)

#### 1. Culpability

A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer. *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (emphasis added). "Intentional" in the default context does not mean "the result of a conscious choice" that would include negligence, but instead means actions that are "willful, deliberate, or evidence of bad faith." *TCI Grp.*, 244 F.3d at 697. "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process is not 'intentional' in our default cases, and is

4

therefore not *necessarily*--although it certainly may be, once the equitable factors are considered--culpable or inexcusable." *Id.* at 698.

The Court finds that Defendant's conduct is not culpable. There is nothing in the record that indicates that Defendant was acting with any intention to take advantage of Plaintiff, interfere with judicial decision-making, or otherwise manipulate legal process. Defendant made every effort to request extensions to file its answer and to promptly cure its forfeited corporate status in California once it determined that it needed to do so. And Defendant kept Plaintiff informed about its efforts and progress. Further, Defendant has attached to its reply memorandum its proposed answer. This conduct is not similar to the conduct in cases where courts have found a defendant's failure to answer culpable. *See TGI Group*, 244 F.3d at 698-99 (discussing cases with culpable conduct).

In sum, the record shows that Defendant attempted to cooperate with Plaintiff in defending the case on its merits by keeping Plaintiff informed about its corporate status and requesting extensions. That the communications were not fruitful does not indicate that Defendant acted culpably in failing to answer.

**2. Meritorious Defense**

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a judgment is not extraordinarily heavy." *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010) (internal quotation marks and citation omitted). All that is necessary to satisfy the "meritorious defense" requirement is to allege sufficient facts that, if true, would constitute a defense: "the question whether the factual allegation is true" is not to be determined by the court when it decides the motion to set aside the default; rather, that question would be the subject of the later litigation. *TCI Grp.*, 244 F.3d at 700.

Here, Defendant raises two defenses to Plaintiff's Complaint: (1) fraud; and (2) the doctrine of unclean hands. Defendant argues pursuant to Civil Code Section 1689(b), "A party to a contract may rescind the contract in the following cases: (1) If the consent of the party…rescinding…was given by mistake, or obtained through duress, menace, fraud…" Cal. Civ.

Code § 1689. Defendant argues Plaintiff fraudulently induced Urigen to enter into the Agreement on or about August 6, 2008 and therefore the Agreement must be rescinded. (Dkt. No. 12-1, p. 12:20-26).

In support of this argument Defendant alleges that it hired Plaintiff as CFO based on Plaintiff's representations that he was a graduate of New York University ("NYU") and a Certified Public Accountant ("CPA"). (Dkt. No. 12-1, p. 10:26-28). Defendant later learned that Plaintiff never received a degree from NYU and he was not a CPA. (Dkt. No. 12-1, p. 11:1-2). Defendant also alleges that Plaintiff neglected his duties as a CFO including: (1) neglecting to evaluate the target shell for a reverse takeover resulting in settlements and still existing payables on Urigen's books to date; (2) neglecting to submit proper payroll tax returns to the Internal Revenue Service ("IRS") resulting in payroll tax liability; (3) refusing to cooperate with the California Board of Equalization ("BOE") during an audit and failing to enforce an asset purchase agreement resulting in further tax liability; and (4) neglecting his duties as an agent for service of process, resulting in a default judgment against Urigen. (Dkt. No. 12-1, p. 11:3-26). These actions, Defendant claims, resulted in, among other things, the California Franchise Tax Board suspending Urigen's authorization to do business in California. (Dkt. No. 12-1, p. 11:14-19). Defendant also claims that Plaintiff kept and continues to keep Urigen's confidential property in his personal possession, which resulted in additional financial harm to Urigen because it cannot access its records for certain filings. (Dkt. No. 12-1, p. 12:7-14). Based on the foregoing allegations regarding Plaintiff's conduct and lack of qualifications, Urigen's Board of Directors decided to terminate Plaintiff's employment on or about April 6, 2011. (Dkt. No. 12-1, p. 12:4-6). Defendant's allegations are sufficient to raise the defense of fraud.

Defendant's second defense is the doctrine of unclean hands. Defendant argues "the unclean hands doctrine provides a complete defense where the employee engaged in inequitable conduct, and where the employee's misconduct relates directly to the events giving rise to the complaint." *Dickson, Carlson & Campillo v. Pole*, 83 Cal. App. 4th 436, 446 (2000). Defendant asserts that Plaintiff did not fulfill his duties as CFO during his employment under the Agreement, which caused Defendant to incur tax liability, have a default judgment entered

1 against it, forfeit its status in California, and incur payables for a failed reverse takeover. (Dkt.
2 No. 12-1, p. 11:3-26). This assertion is sufficient to raise the defense of unclean hands, as it is
3 possible that if these allegations are true, the Plaintiff's misconduct resulted in the Defendant's
4 inability to fully compensate the Plaintiff under the terms of the Agreement.

5     Plaintiff's assertion that Defendant's Motion does not comply with the procedural or
6 substantive requirements of Rule 55(c) is not persuasive. Defendant is not required to produce
7 evidence at this stage; rather, it is required to make specific allegations, that, if true, would raise
8 a meritorious defense. *TCI Grp.*, 244 F.3d at 700.  It has done so. And Rule 55© does not require
9 the moving party to submit a proposed answer with its motion.

10 ### 3. Prejudice

11 Having to try a case on the merits is not, by itself, sufficient prejudice to warrant denial of
12 a motion for relief from entry of default. *TCI Grp.*, 244 F.3d at 701. There must be a greater harm
13 to the plaintiff than the mere delay of the resolution of the case; the plaintiff's ability to pursue
14 his claim must be hindered. *Id.* Thus, the delay must result in tangible harm such as loss of
15 evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion to
16 support a finding of prejudice. *Id.* Plaintiff has not alleged any such prejudice from allowing this
17 case to now proceed on the merits.

18 **CONCLUSION**

19 Defendant has established that its default did not arise from any culpable conduct and
20 that it has a potentially meritorious defense to Plaintiff's claims. And Plaintiff has not articulated
21 any prejudice that it would suffer as a result from setting aside the entry of default. As all three
22 factors weigh in favor of setting aside the entry of default, the Court GRANTS Defendant's
23 motion.

24 Defendant's answer shall be filed on or before October 11, 2012 and the Court will hold
25 an initial case management conference at 1:30 p.m. on November 1, 2012.

26 This Order disposes of Docket No. 12.
27 //
28 //

1 **IT IS SO ORDERED.**

2 Dated: Oct. 5, 2012

3 _____
JACQUELINE SCOTT CORLEY
4 UNITED STATES MAGISTRATE JUDGE